EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ENRIQUE GARCIA MORALES, *on behalf of himself, FLSA Collective Plaintiffs and the Class*,

                        Plaintiff,

– against –

NEW INDIAN FOODS, LLC d/b/a THE BOMBAY BREAD BAR, and FLOYD CARDOZ,
Defendants.

18-cv-3401

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is entered into by and between Enrique Garcia Morales (the "Named Plaintiff"), individually and on behalf of the Class (as defined below), and New Indian Foods, LLC d/b/a The Bombay Bread Bar and Floyd Cardoz (collectively "Defendants" and the Defendants with Named Plaintiff, the "Parties").

**RECITALS AND BACKGROUND**

WHEREAS, Named Plaintiff filed a Complaint in the United States District Court, Southern District of New York, fashioned *Morales v. New Indian Foods, LLC, et al.*, Case No.: 18-CV-3401 (the "Litigation");

WHEREAS, on May 17, 2018, Named Plaintiff filed an Amended Complaint in the Litigation;

WHEREAS, the Litigation asserts collective and class action claims against Defendants, and further alleged that Defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL") Article 6, §§ 190 *et seq.*, and Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations;

WHEREAS, solely for the purpose of settling this Litigation, and without admitting any wrongdoing or liability, Defendants have agreed, for settlement purposes only, to class certification under Rule 23 of the Federal Rules of Civil Procedure ("FRCP") and collective certification under the FLSA;

WHEREAS, the Parties have engaged in and completed extensive informal discovery in connection with the potential settlement of this matter;

WHEREAS, Named Plaintiff and Defendants, through their counsel, have also participated in extensive arms-length negotiations in efforts to settle the disputes underlying the Litigation;

1

WHEREAS, the Parties and their counsel also participated in a full-day mediation session on October 3, 2018, which was conducted by Martin Scheinman, an experienced and well-known mediator who has successfully negotiated settlements in similar wage and hour class and collective actions against New York City restaurants;

WHEREAS, Defendants denied and continue to deny all of the material allegations made by Named Plaintiff in the Litigation and have denied and continue to deny that they are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Nonetheless, solely for the purpose of settling this Litigation, and without admitting any wrongdoing or liability, Defendants have agreed to disseminate a notice of settlement pursuant FRCP 23 and the FLSA to all Class Members and FLSA Collective Members (as both terms are defined below);

WHEREAS, the purpose of this Agreement is to settle fully and finally all State Law Claims and FLSA Claims (as defined below), among the Named Plaintiff, Class Members, FLSA Collective Members, and the Defendants, including all wage and hour claims that were or that could have been asserted in the Litigation, in order to avoid the burden, expense, and uncertainty of continuing the Litigation; and

WHEREAS, Class Counsel (as defined below) analyzed and evaluated the merits of the claims made against Defendants and the impact of this Agreement on Named Plaintiff, Class Members and FLSA Collective Members, and based upon Class Counsel analysis and evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery whatsoever, or might result in a recovery that is less favorable and that would not occur for several years, Class Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable and adequate and that this Agreement is in the best interest of the Named Plaintiff, Class Members, and FLSA Collective Members.

NOW THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

## 1. DEFINITIONS

The defined terms set forth in this Agreement have the meanings ascribed to them below.

**1.1** **"Action" or "Litigation."** The Action or Litigation shall mean the filed complaint in the United States District Court, Southern District of New York, fashioned *Morales v. New Indian Foods LLC, et al.*, No. 18-cv-3401.

**1.2** **"Administrator" or "Claims Administrator."** The Administrator or Claims Administrator refers to Arden Claims Service, the Administrator selected by Class Counsel in consultation with Defendants' Counsel to mail the Notices and administer the Settlement.

2

**1.3** "**Agreement.**" Agreement means this Settlement Agreement and Release.

**1.4** "**Class**" **or** "**Class Member(s).**" Class or Class Members shall be defined as during the Relevant Time Period (defined herein): Named Plaintiff and all current and former non-exempt employees of the Defendants' restaurant located at 195 Spring Street, New York, New York, who do not opt-out of the Litigation as explained below, amounting to no greater than 320 class members.

**1.5** "**Class Counsel**" **or** "**Plaintiff's Counsel.**" Class Counsel or Plaintiffs' Counsel shall mean Lee Litigation Group, PLLC.

**1.6** "**Class Member List**" **or** "**Class List.**" The Class Member List or Class List shall mean a list, in Excel, of all Class Members, not to exceed 320 individuals, identified by: (i) name; (ii) last known address; (iii) job position or department; (iv) dates of employment; and (v) Social Security Numbers, if available, contained in a confidential document that the Defendants shall provide to Class Counsel and the Claims Administrator. The Class Member List is to be used by Class Counsel and the Claims Administrator to effectuate settlement, and may not be copied, disseminated or used for any other purpose.

**1.7** "**Corporate Defendant.**" The Corporate Defendant shall mean New Indian Foods, LLC d/b/a The Bombay Bread Bar.

**1.8** "**Court.**" The Court shall mean the United States District Court, Southern District of New York.

**1.9** "**Days.**" Unless otherwise specified, days shall mean calendar days.

**1.10** "**Defendants.**" The Defendants are the Corporate Defendant and individual defendant Floyd Cardoz.

**1.11** "**Defense Counsel.**" Defense Counsel shall mean Fox Rothschild LLP.

**1.12** "**Fairness Hearing.**" The Fairness Hearing shall mean the hearing before the Court relating to the Application for Final Approval, unless otherwise scheduled by the Court without the filing of a motion.

**1.13** "**Final Effective Date.**" The Final Effective Date shall be thirty-five (35) days after the Court has entered a Final Approval Order (as defined herein) approving this Agreement, provided the time to appeal from the Final Approval Order has expired and no notice of appeal has been filed. In the event a notice of appeal is filed, the Final Effective Date shall be the latest of the following has occurred: (1) any appeal from the Final Approval Order has been finally dismissed; (2) the Final Approval Order has been affirmed on appeal in a form substantially identical to the form of the Final Approval Order entered by the Court; (3) the time to petition for review with respect to any appellate decision affirming the Final Approval Order has expired; and (4) if a petition for review of an appellate decision is filed, the petition has been denied or dismissed, or, if granted, has resulted in affirmance of the Final Approval Order in a form substantially identical to the form of the Final Approval Order entered by the Court

**1.14** **"Final Approval Order."** The Final Approval Order shall mean the order entered by the Court after the Fairness Hearing approving the terms and conditions of this Agreement, distribution of the settlement payments from the Settlement Account, approval of professional fees and costs, and dismissal of the Litigation with prejudice.

**1.15** **"FLSA Collective Member(s)."** FLSA Collective Members shall be defined as Named Plaintiff and all current and former non-exempt employees of the Defendants' restaurant located at 195 Spring Street, New York, New York at any time from June 1, 2016 to October 3, 2018. Only FLSA Collective Members who endorse their settlement checks and/or have filed a consent to join form to join the lawsuit and Named Plaintiff, will fully and finally release their FLSA claims as provided for in Section 4.1(B).

**1.16** **"FLSA Claims."** The FLSA Claims shall mean all wage and hour claims that could have been asserted pursuant to the Fair Labor Standards Act by or on behalf of Named Plaintiff and the FLSA Collective Members, other than claims for retaliation under 29 U.S.C. § 218(c). Released FLSA Claims include, but are not limited to, all claims under federal law for unpaid minimum or overtime wages, tip credit claims, tip misappropriation claims, and any other related wage and hour claims, all "derivative benefit claims" *(defined as* claims for benefits resulting from the alleged failure to pay overtime or wages, both ERISA and non-ERISA benefits), interest on such claims, liquidated damages on such claims, and attorneys' fees, expenses and costs related to such claims.

**1.17** **"Motion for Final Approval."** The Motion for Final Approval shall mean the Named Plaintiff's anticipated motion, with supporting documents and materials, for the Court's final approval of the settlement.

**1.18** **"Named Plaintiff."** The Named Plaintiff shall mean Enrique Garcia Morales.

**1.19** **"Notice" or "Notices."** Notice or Notices shall mean the Court–approved Notice of Proposed Settlement including notice of an opportunity to opt-out and/or object to the proposed settlement.

**1.20** **"Objector."** An Objector shall mean any Class Member who properly files an objection to this Agreement, and does not include any individual who opts-out of this Agreement.

**1.21** **"Opt-out Statement."** An Opt-out Statement is a written signed statement that a Class Member who has decided to opt-out and not be included in this Agreement. Any Class Member who does not submit an Opt-out Statement waives and releases all New York State Law Claims, even if he or she does not cash his or her settlement check(s) in this matter. Only Class Members who endorse their settlement checks will waive and release their FLSA Claims as well. Class Members who submit an Opt-out Statement retain their FLSA Claims and/or New York State Law Claims.

**1.22** **"Parties."** The Parties shall refer to Named Plaintiff and Defendants collectively.

**1.23** **"Plaintiffs."** Shall mean Named Plaintiff, FLSA Collective Members, and Class Members collectively.

**1.24** **"Preliminary Approval Order."** The Preliminary Approval Order shall mean the Order entered by the Court: (i) certifying the FRCP 23 Class and FLSA Collective solely for purposes of effectuating the Agreement; (ii) preliminarily approving the terms and conditions of this Agreement; (iii) appointing Lee Litigation Group, PLLC as Class Counsel; (iv) directing the manner and timing of providing Notice to the Class Members; (v) appointing the Claims Administrator; and (vi) setting dates to effectuate the terms of this Agreement, including the date of the Fairness Hearing.

**1.25** **"Relevant Period" or "Relevant Time Period."** The Relevant Period or Relevant Time Period means June 1, 2016 through October 3, 2018.

**1.26** **"Restaurant."** Restaurant shall mean The Bombay Bread Bar, formerly known as Paowalla, located at 195 Spring Street, New York, New York, which is owned and operated by Defendants.

**1.27** **"Settlement Account."** The Settlement Account shall mean a qualified settlement fund established by the Administrator, pursuant to this Agreement, at a bank reasonably acceptable to the Parties. The Settlement Account shall contain the aggregate of all Claims, service award, professional fees and costs as authorized by the Court in the Final Order, but in no event shall the Settlement Account exceed the Settlement Fund.

**1.28** **"Settlement Checks."** The Settlement Checks shall mean the checks issued to Class Members from the Settlement Account by the Administrator as calculated by the Administrator in accordance with this Agreement.

**1.29** **"Settlement Fund."** The Settlement Fund shall mean the maximum aggregate amount that can be paid by Defendants pursuant to this Agreement and includes any service award, professional fees, costs, and expenses. Under no circumstances shall the Settlement Fund exceed THREE HUNDRED THOUSAND DOLLARS ($300,000.00), except for employer's share of payroll taxes.

**1.30** **"State Law Claims."** The State Law Claims shall mean all wage and hour claims that were or that could have been asserted by Named Plaintiff and Class Members under the New York Labor Law, the New York Hospitality Industry Wage Order, the New York Restaurant Industry Wage Order, the New York Wage Theft Prevention Act, and the New York Minimum Wage Act, except for claims of retaliation under said statutes and regulations. Released New York State Law Claims include, but are not limited to, all claims under state law for unpaid minimum or overtime wages, tip credit claims, tip misappropriation claims, unpaid spread-of hours claims, unpaid call-in pay claims, service charge claims, unpaid uniform maintenance fees, improper wage deductions, claims for gratuities, Wage Theft Prevention Act Penalties and any other related wage and hour claims, all 'derivative benefit claims' *(defined as* claims for benefits resulting from the alleged failure to pay overtime or wages, both ERISA and non-ERISA benefits), damages related to such claims, interest on such claims, liquidated damages on such claims, penalties on such claims, attorneys' fees, expenses, and costs related to such claims.

**2.** **INITIAL PROCEDURAL ISSUES**

**2.1     Binding Agreement.** This Agreement is a binding agreement and contains all material agreed-upon terms.

**2.2     Retention of the Administrator.** Class Counsel shall engage Arden Claims Service as Administrator to mail Notices and administer the settlement.

**2.3     Responsibilities of the Administrator.** The Administrator shall be responsible for:

- (A)     preparing, printing and disseminating the Notice to the Class;

- (B)     copying counsel for all Parties on material correspondence and promptly notifying all counsel for the Parties of any material requests or communications made by any Party;

- (C)     promptly furnishing to counsel for the Parties copies of any Opt-out Statements, objections or other written or electronic communications from the Class which the Administrator receives;

- (D)     keeping track of Opt-out Statements including maintaining the original mailing envelope in which the request was mailed;

- (E)     mailing all required tax forms to Class Members and to Class Counsel as provided herein;

- (F)     setting up a Settlement Account to be used for the distribution of all Settlement Checks to Class Members, Plaintiffs' Counsel, the Claims Administrator and to Named Plaintiff;

- (G)     calculating the amount of each Class Member's Settlement Check;

- (H)     calculating the employer-side payroll taxes required pursuant to the settlement;

- (I)     calculating and paying each Class Member's taxes and preparing appropriate tax forms for Defendants and for each Class Member;

- (J)     mailing the Settlement Checks to Class Members;

- (K)     ascertaining current address and addressee information for each Notice returned as undeliverable and the mailing of Notice;

- (L)     responding to inquiries of the Class regarding procedures for filing objections and Opt-out Statements;

- (M)     referring to Class Counsel all inquiries by the Class regarding matters not within the Administrator's duties specified herein;

- (N)     responding to inquiries from Class Counsel and Defense Counsel consistent with the Administrator's duties specified herein;

(O)     promptly apprising Class Counsel and Defense Counsel of the activities of the Administrator;

(P)     maintaining adequate records of its activities, including the dates of the mailing of Notice(s), returned mail and other communications and attempted written or electronic communications with the Class;

(Q)     confirming in writing to Plaintiffs' Counsel and Defense Counsel its completion of the administration of the settlement;

(R)     timely responding to communications from the Parties or their counsel;

(S)     distributing notices pursuant to the Class Action Fairness Act ("CAFA"); and

(T)     such other tasks the Parties mutually agree.

In addition, no later than twenty (20) days prior to the Fairness Hearing, the Administrator shall certify jointly and provide to Plaintiff's Counsel and to Defense Counsel: (a) a list of all Class Members with their estimated awards; (b) a list of all Class Members who filed timely objections; and, (c) a list of all Class Members who requested to opt-out of the settlement at any time during the opt-out period and their estimated award(s). The Administrator shall also provide Defense Counsel with an updated address list for the Class. Throughout the period of claims administration, the Administrator will provide reports to the Parties upon request by either Party regarding the status of the mailing of the Notices to the Class, the claims administration process, and distribution of the Settlement Checks or any other aspect of the claims administration process.

**2.5**     **Notice to Class.** The Notice will inform Class Members about this Settlement and will also advise them of the opportunity to object to, opt-out of, do nothing and remain in the Class in order to obtain a Settlement Check pursuant to this Agreement, and/or to appear at the Fairness Hearing. Within thirty (30) days of the entry of the Preliminary Approval Order by the Court, the Administrator will mail to all Class Members, via First Class United States Mail, the Court–approved Notices of Proposed Class and Collective Action Settlement. The Administrator will take all *reasonable steps* to obtain the correct address of any Class Member for whom a Notice is returned by the post office as undeliverable, including one skip trace, and shall attempt a re-mailing to any Class Member for whom it obtains a more recent address. The Administrator will notify Class Counsel and Defense Counsel of any Notice sent to a Class Member that is returned as undeliverable after the first mailing, as well as any such Notice returned as undeliverable after any subsequent mailing(s) as set forth in this Agreement. Class Members who do not appear on Defendants' Class List have until the end of the Opt-out Period (defined herein) to identify themselves.

**2.6**     **Access to the Administrator.** The Parties will have equal access to the Administrator throughout the claims administration period. Class Counsel and Defense Counsel agree to provide the Administrator with all accurate information necessary to reasonably assist the Administrator in locating the Class.

**2.7**     **Approval of the Preliminary Approval Order.**

7

    (A)    On or before November 16, 2018, Plaintiff's Counsel shall file a motion for Preliminary Settlement Approval ("Preliminary Approval Motion") which shall include: (i) the proposed Notice of Proposed Class and Collective Action Settlement; (ii) a proposed Preliminary Approval Order; (iii) an executed version of this Agreement; and (iv) the necessary documents, memorandum, affidavits, and exhibits for the purposes of certifying a Class under FRCP 23 and FLSA Collective Action for settlement purposes only, and preliminarily approving the Agreement.

    (B)    The Preliminary Approval Motion will also seek: (i) the appointment of the Claims Administrator to administer the settlement; (ii) the setting of a date for individuals to opt-out of this Agreement and/or provide objections to this Agreement, which date will be thirty (30) days from the initial mailing of Notice to the Class Members by the Administrator; and (iii) to set a date for the Fairness Hearing, for Final Approval of the Settlement which shall be no earlier than ninety (90) days following the date that the Court enters the proposed Preliminary Approval Order.

    (C)    The proposed Notice and Preliminary Approval Order shall be drafted by Class Counsel, but subject to comment and approval by Defense Counsel.

    (D)    Class Counsel will inform the Court of the intended process to obtain a "Final Approval Order" and a "Order of Dismissal" that will, among other things: (1) approve the settlement as fair; (2) approve the proposed notice to the Class; (3) incorporate the terms of the Release, as described herein; (4) dismiss the Litigation with prejudice; (5) award Class Counsel fees, expenses and costs; (6) award the Service Award; and (7) appoint the Administrator and award the Administrator fees and expenses.

    (E)    The Parties will work together, diligently and in good faith, to expeditiously obtain a Preliminary Approval Order, Final Approval Order, and Final Dismissal with prejudice. Any disputes which arise between the Parties related to the Parties' efforts to obtain a Final Approval Order, Final Dismissal with prejudice shall be submitted to the Court.

**2.8    Class Member List.**

    (A)    Within fourteen (14) days of the Court's entry of the Preliminary Approval Order, Defense Counsel will provide Class Counsel and the Claims Administrator, in electronic form, the Class Member List. All information provided regarding the Class will be treated as confidential information by Class Counsel and the Administrator. Said information will not be used by Class Counsel and the Administrator for any purpose other than to effectuate the terms of settlement.

**2.9    Opt-outs.**

    (A)    Class Members who choose to opt-out of the settlement as set forth in this Agreement must mail via First Class United States Mail, postage prepaid, a

8

written, signed statement to the Administrator that states he or she is opting out of the settlement, and include his or her name, address, and telephone numbers and statement indicating his or her intention to opt-out such as: "I opt out of the Bombay Bread Bar wage and hour settlement" or words to that effect ("Opt-out Statement"). To be effective, an Opt-out Statement must be post-marked or received by the Administrator within thirty (30) days after the initial mailing of Notice to the Class.

(B) The end of the time period to opt-out of the settlement ("Opt-out Period") shall be thirty (30) days after the initial mailing of Notice to the Class.

(C) The Administrator will send a final list of all Opt-out Statements to Class Counsel and Defense Counsel no later than fourteen (14) days after the Opt-out Period. The Administrator will retain the stamped originals of all Opt-out Statements and originals of all envelopes accompanying Opt-out Statements in its files until such time as the Administrator is relieved of its duties and responsibilities under this Agreement.

(D) Any Class Member who does not submit an Opt-out Statement pursuant to this Agreement will be deemed to have accepted the settlement and the terms of this Agreement, will be bound by the settlement in this case, and have any State Law Claims released and dismissed. Class Members who endorse their settlement check(s) will also release their FLSA Claims.

## 2.10 Objections to Settlement.

(A) Objectors who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in writing. To be considered, such statement must be mailed to the Administrator via First-Class United States Mail post-marked by thirty (30) days after the initial mailing of Notice to the Class. The statement must include all reasons for the objection, and any supporting documentation. The statement must also include the name, address, and telephone number for the Class Member making the objection. The Administrator will stamp the date received on the original and send copies of each objection, supporting documents, to Class Counsel and Defense Counsel by email delivery no later than three (3) days after receipt of the objection. The Administrator shall provide all objections in its final affidavit to be filed with the application for Final Approval no later than twenty (20) days prior to the Fairness Hearing.

(B) An Objector also has the right to appear at the Fairness Hearing, either in person or through counsel hired by the Objector. An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her written objections at the time he or she submits his or her written objections. An Objector may withdraw his or her objections at any time. An Objector is a

Class Member and an objection does not constitute the filing of an Opt-out Statement.

**2.11    Fairness Hearing and Motion for Final Approval and Dismissal.**

(A)    In accordance with the schedule set by the Court in the Preliminary Approval Order and in advance of the Fairness Hearing, Class Counsel shall file a Motion for Final Approval, with supporting documents and materials for final Approval of the settlement. The Motion for Final Approval may contain a compliance affidavit from the Administrator, an application for attorneys' fees, costs, and Service Award and supporting affirmation and documents from Class Counsel regarding the fairness, adequacy and reasonableness of the Settlement or any aspect related to this Agreement. The Motion for Final Approval may also include a proposed Final Approval Order.

(B)    At the Fairness Hearing, the Parties will request that the Court, among other things: (1) approve the settlement and Agreement as fair, reasonable, adequate, and binding on all Class Members who have not timely opted out of the settlement; (2) order the Administrator to distribute the Settlement Checks to the Class Members; (3) order the attorneys' fees, expenses and costs to be paid to Class Counsel out of the Settlement Account; (4) order the Administrator's fees and expenses be paid out of the Settlement Account; (5) order that the Service Awards be paid out of the Settlement Account; (6) order the dismissal with prejudice of all State Law Claims by all Class Members who did not opt-out; (7) dismiss FLSA Claims for FLSA Collective Members who endorsed their settlement check(s); (8) order entry of Final Dismissal in accordance with this Agreement; and (9) retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

**2.12    Effect of Failure to Grant Final Approval.** In the event the Court fails to dismiss this matter with prejudice in accordance with this Agreement or such dismissal or this settlement does not become Final as defined herein, the Parties shall resume the Litigation unless the Parties jointly agree to: (1) seek reconsideration or appellate review of the decision denying entry of dismissal with prejudice, or (2) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement. In the event any reconsideration or appellate review is denied, or a mutually agreed-upon settlement is not approved:

(A)    The Litigation will proceed as if no settlement had been attempted. In that event, the class and collective certified for purposes of settlement shall be automatically decertified, and Defendants may contest whether this Litigation should be maintained as a class action or collective action and contest the merits of the claims being asserted by Named Plaintiff in this action. In such a case, the Parties will negotiate and submit for Court approval a revised case management schedule

(B)    The Settlement Claims Administrator will provide notice to Class Members that the Agreement did not receive final approval and that, as a result, no payments will

10

be made to Class Members under the Agreement. Such notice shall be mailed by the Settlement Claims Administrator via First Class United States Mail, postage prepaid, to the addresses used by the Settlement Claims Administrator in mailing the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing.

(C) The Settlement Fund will be returned to Defendants, less one half of the accrued administration fees of the Administrator if the Notices were already distributed by the Administrator. The Named Plaintiff shall be responsible for the other half of the accrued administration fees of the Administrator.

## 3. SETTLEMENT TERMS

### 3.1 Settlement Fund Computation and Allocations.

(A) **Settlement Fund Formula.** Individual Class Members' proportionate shares of the Settlement Fund shall be computed pursuant to the following formula:

(1) Class Members employed by Defendants during the Relevant Time Period shall receive 1 point for every week they worked at the Restaurant during the Relevant Time Period.

(2) (a) The Settlement Fund, after deductions for court approved attorneys' fees and expenses, settlement administration fees and expenses, service award, and all other court approved expenses or disbursements, will be divided by the aggregate number of points accrued by all of the Class Members who do not timely opt-out of the settlement ("Point Value"); (b) each Class Member's total points will be multiplied by the Point Value to determine his or her "Individual Settlement Amount"; and (c) only Class Members who do not timely opt-out under the terms of this Agreement shall be entitled to receive their Individual Settlement Amount.

(3) If any Class Member's Individual Settlement Amount under this formula is less than $20.00, that Class Member's Individual Settlement Amount will be increased to $20.00, subtracted from the Settlement Account, and all other Class Members' Individual Settlement Amounts will be recalculated according to the formula set forth above in order to meet this floor payment.

(4) Only Class Members who do not opt-out shall be entitled to receive their Individual Settlement Amount.

(B) **Service Award to Named Plaintiff.** Class Counsel shall seek Court Approval of the payment of a Service Award of $10,000 to Named Plaintiff in consideration for work performed on behalf of the Class (the "Service Award"). Defendants shall not oppose this application, including any appeal or request for reconsideration if the application is denied or modified by the Court, provided it does not increase the Settlement Fund. In the event the Court inquires about Defendants' position on the issue of the Service Award, Defendants will inform the Court that they take no position on the issue so long as it does not increase the Settlement Fund. The substance of Named Plaintiff's application for a Service Award is not part of this

11

Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy and good faith of the settlement of the Litigation. The outcome of the Court's ruling on the application for a Service Awards shall not terminate this Agreement or otherwise affect the Court's Final Approval.

(C) **Payment to the Settlement Account.**

(1) The Parties acknowledge that Defendants deposited $225,000 of the Settlement Fund with the Claims Administrator on or about October 12, 2018,

(2) Within 7 calendar days after the Final Effective Date, Defendants shall remit the remainder of the Settlement Fund to a third-party escrow account or the Claims Administrator. Defendants may remit the remainder of the Settlement Fund, in whole or in part, to a third-party escrow account or the Claims Administrator prior to the Effective Date.

(D) **Attorneys' Fees and Costs to Enforce Payment.** Should the Defendants fail to fund the entire Settlement Fund by the dates set forth in Section 3.1(C) herein and should Named Plaintiff incur attorneys' fees and costs to enforce payment of the entire Settlement Fund as set forth in Section 3.1(C), then if a court of competent jurisdiction determined that Defendants failed to pay the entire Settlement Fund as set forth in Section 3.1(C), Named Plaintiff shall be entitled to recover all reasonable attorneys' fees and costs incurred in enforcing said Section.

(E) **Mailing of Settlement Checks.** The Administrator shall, within twenty (20) days after receipt of the complete funding of the settlement fund, and provided the Final Effective Date has passed, send Settlement Checks comprising the Plaintiffs' Individual Settlement Amounts, Class Counsels' approved professional fees and expenses, and any service award for Named Plaintiffs, to the Class Members, FLSA Collective Members, Class Counsel, and Named Plaintiffs, respectively. The Administrator shall also issue a check for the Administrator's fee.

(F) **Time to Cash Settlement Checks.** Class Members shall have one hundred twenty (120) days after the Settlement Checks are mailed to cash the respective Settlement Checks; after such time, any checks that have not been cashed shall be void and the monies returned to the Net Settlement Fund. After the 120 days and prior to any *cy pres* donation, residual funds may be applied to any unforeseen liabilities, claims, expenses, and costs, provided the Administrator first consults with and obtains approval from Class Counsel and Defendants' Counsel. Any uncashed settlement checks, and all other amounts remaining in the fund after 120 days shall be applied to a *cy pres* charitable donation in the Defendants' names to Share Our Strength.

**3.2 Professional Fees and Cost.** At the Fairness Hearing, Class Counsel will petition the Court for an award of attorneys' fees not to exceed ONE HUNDRED THOUSAND DOLLARS ($100,000.00) as well as for reimbursement of their actual litigation expenses and costs. These

fees and costs shall come out of the Settlement Fund. Defendants will not oppose this application, including any appeal or request for reconsideration if the application is denied or modified by the Court and provided it does not increase the Settlement Fund. The substance of Class Counsel's application for attorneys' fees and costs is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's Final Approval.

**3.3** **Administrator's Fees.** As part of Named Plaintiff's motion for final approval of the settlement, Named Plaintiff will submit a declaration from the Administrator detailing the administration process, and will petition the Court for an award of administration fees not to exceed TWELVE THOUSAND FIVE HUNDRED DOLLARS ($12,500.00). At the Fairness Hearing, Class Counsel will petition the Court to award the Administrator its fees and expenses to be paid out of the Settlement Fund. The substance of Class Counsel's application for the Administrator's fees and expenses is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of any proceeding related to the request for Administrator costs and expenses shall not terminate this Agreement or otherwise affect the Court's Final Approval. The Administrator Fees shall be deducted from the Settlement Fund prior to distribution of any monies to the Class Members, FLSA Collective Members, Class Counsel and/or the Named Plaintiff.

**3.4** **Tax Characterization.**

(A) Except as set forth below, settlement payments to the Class Members will be allocated as follows for tax purposes: (i) 33% in consideration for time worked as back-wage payments and/or wage income subject to W-2 reporting; and (ii) 67% in consideration for liquidated damages, penalties, and interest as non-wage payments subject to 1099 reporting.

(B) All Wage Payments *(i.e.,* the portion set forth in Section 3.4(A)(i) above) shall be subject to all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") on an IRS Form W-2. All Non-Wage Payments *(i.e.,* the portion set forth in Section 3.4(A)(ii) above) shall be made without any tax withholdings and shall be reflected on a Form 1099 issued to each Class Member. Payments of attorneys' fees and costs pursuant to Section 3.2 shall be made without any withholdings, and a Form 1099 shall be issued for this payment. Any Service Award Payment shall be made without any withholdings and reported to the IRS via a Form 1099. Defendants and the Claims Administrator shall exchange such information as is necessary for the Claims Administrator to make proper tax withholdings and comply with tax reporting obligations as described in this Section 3.4.

(C) Defendants shall pay the employer's share of the FICA tax and any federal and state unemployment tax due that are traditionally borne by employers, with respect to the Wage Payments. The Administrator shall be responsible for making

13

all withholdings from employees' settlement payments required pursuant to any federal, state, or local tax law or regulation, with respect to the Wage Payments. The Claims Administrator shall inform Defense Counsel of the estimated employer-side payroll taxes that will have to be paid by Defendants as soon as practicable and no later than within three (3) days of the Court entering a Final Approval Order.

**3.5** **Hold Harmless.**

(A) With respect to payments received pursuant to this Agreement that are characterized as Attorneys' Fees, Class Counsel assumes responsibility of any and all federal, state and local taxes or contributions which may hereafter be imposed or required to be paid under any federal, state, or local law of any kind. As such, although the Parties believe, in good faith, that the tax treatment of all payments set forth in this Agreement are proper and in compliance with applicable IRS regulations, if, notwithstanding such belief, the Internal Revenue Service or any other federal, state or local government, administrative agency or court determines that Class Counsel is liable for any federal, state or local taxes or contributions with respect to any payment received pursuant to this settlement that is characterized as Attorneys' Fees, Class Counsel shall be responsible for said payments.

**4.** **RELEASE**

**4.1** **Release of Claims.**

(A) **Release of New York State Wage And Hour Claims.** Upon the Final Approval Order being issued, and except as to such rights or claims as may be specifically created by this Agreement, each Class Member who does not opt-out of this Agreement, on his or her behalf, and on behalf of his or her respective current, former and future heirs, executors, and administrators, fully releases and discharges Defendants, and their respective shareholders, members, officers, directors, employees, members, managers, fiduciaries, trustees, employee benefit plan administrators, agents, attorneys, insurers, successors and assigns, and all persons or entities acting by, through, under or in concert with any of them, and any individual or entity which could be jointly liable with any of them (collectively, the "Releasees"), from any and all claims for any wage and hour violations (other than claims for retaliation) that may have occurred arising from or relating to each Class Member's employment or engagement with the Corporate Defendants under New York state and/or local law, including, but not limited to, any and all claims for unpaid wages, tips, gratuities, service charges, administrative or other mandatory charges, penalties, overtime pay, failure to maintain and furnish employees with proper wage records, claims to recover the tip credit, spread-of-hours claims, meal break claims, meal credit claims, uniform maintenance claims, uniform reimbursement claims, and all other claims that were or could have been asserted in the Litigation, whether known or unknown, under state and/or local wage and hour laws (including, but not limited to, the New York Labor Law, New York

        Hospitality Industry Wage Order, New York Restaurant Industry Wage Order, New York Order for Miscellaneous Industries and Occupations, the New York Minimum Wage Act, and the New York Wage Theft Prevention Act), through the date on which the Court grants preliminary approval of the Final Settlement Agreement and Notice. This release includes all claims for all damages arising from any such released claims, including claims for liquidated damages, penalties interest, and attorneys' fees and costs.

(B) **Release of FLSA Claims.** Upon the Final Approval Order being issued, and except as to such rights or claims as may be specifically created by this Agreement, each FLSA Collective Member who endorses their settlement checks, on his or her behalf, and on behalf of his or her respective current, former and future heirs, executors, administrators, agents, and attorneys, fully releases and discharges the Releasees, from any and all claims for any wage and hour violations (other than claims for retaliation) that may have occurred arising from or relating to each Class Member's employment or engagement with Corporate Defendants under federal law, including, but not limited to, any and all claims for unpaid wages, tips, gratuities, service charges, administrative or other mandatory charges, penalties, overtime pay, claims to recover the tip credit and all other claims that were or could have been asserted in the Litigation, whether known or unknown, under federal wage and hour laws (including, but not limited to, the Fair Labor Standards Act ("FLSA")), through the date on which the Court grants preliminary approval of the Final Settlement Agreement and Notice. This release includes all claims for all damages arising from any such released claims, including claims for liquidated damages, interest, and attorneys' fees and costs.

(C) All Settlement Checks shall contain, on the back of the check, the following limited endorsement:

**"RELEASE OF CLAIMS:**

By endorsing this check, I consent to join the case entitled *Morales v. New Indian Foods, LLC, et al.*, and I hereby release Defendants from all wage and hour claims under the Fair Labor Standards Act, the New York Labor Law and/or any other applicable wage and hour law, rule or regulation brought or which could have been brought in the litigation, including, but not limited to, minimum wage and overtime claims."

Any modification or amendment of the above-language by the Class Member, at Defendants' discretion, may not be accepted, and may void the Settlement Check. The Administrator shall provide Defendants signed copies of each Settlement Check after they have been cashed.

(D) In addition to the waiver and release contained in 4.1(A)-(B) above, and in consideration for the Service Award received under 3.1(B), Named Plaintiff knowingly and voluntarily, on his behalf, and on behalf of his respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys, fully releases and discharges Releasees from any and all claims arising up to and

15

81763541.v1

as of the date of this Agreement, both known and unknown, which Named Plaintiff has or may have against Releasees including, but not limited to, any alleged violation of: Title VII of the Civil Rights Act of 1965; The Civil Rights Act of 1991; Sections 1981 through 1988 of Title 42 of the United States Code; The Equal Pay Act; the Genetic Information Nondiscrimination Act of 2008; The Employee Retirement Income Security Act of 1974; The Immigration Reform and Control Act; The Consolidated Omnibus Budget Reconciliation Act; The Americans with Disabilities Act of 1990; The Fair Credit Reporting Act; The Occupational Safety and Health Act; The Federal Worker Adjustment and Retraining Notification Act; The Family and Medical Leave Act; The New York Worker Adjustment and Retraining Notification Act; The New York State Human Rights Law; The New York Civil Rights Law; The New York City Human Rights Law; and any other federal, state, and/or local law or ordinance. This release includes all claims for all damages arising from any such released claims, including claims for liquidated damages, interest, and attorneys' fees and costs. In the event the Court does not award the Named Plaintiff any portion of his sought Service Award, such Named Plaintiff shall only release claims pursuant to Sections 4.1(A) and 4.1(B).

(E)  **No Assignment.** Class Counsel and Named Plaintiff, on behalf of the Class and each individual Class Member, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

(F)  **Non-Admission of Liability.** By entering into this Agreement, Defendants in no way admit any violation of law or any liability whatsoever to Plaintiff, individually or collectively, all such liability being expressly denied. Likewise, by entering into this Agreement, Defendants in no way admit to the suitability of this case for class or collective action litigation other than for purposes of settlement. Rather, Defendants enter into this Agreement to avoid further protracted litigation and to resolve and settle all disputes with Plaintiffs. Settlement of the Litigation, negotiation and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of this Agreement or the settlement: (i) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Defendants or of the truth of any of the factual allegations in any and all Complaints filed in the Lawsuit; and (ii) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendants in any civil, criminal, administrative or arbitral proceeding. The Parties understand and agree that this Agreement is a settlement document and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of the Agreement.

(G)  Except as provided in this Agreement, upon payment of the attorneys' fees, expenses, and costs approved by the Court, Class Counsel and the Plaintiffs hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that he, she or they may have against Defendants for attorneys' fees or costs

associated with Class Counsel's representation of the Class and Collective. Class Counsel further understands and agrees that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees, expenses and costs associated with Class Counsel's representation in the Litigation.

## 5. INTERPRETATION AND ENFORCEMENT

**5.1    Cooperation Between the Parties; Further Acts.** The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**5.2    Entire Agreement.** This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

**5.3    Binding Effect.** This Agreement shall be binding upon the Parties and, with respect to Plaintiffs, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

**5.4    Arms' Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

**5.5    Captions.** The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**5.6    Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

**5.7    Blue Penciling.** If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect.

**5.8    Governing Law.** This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

**5.9    Continuing Jurisdiction.** The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

**5.10**  **Waivers, etc. to Be in Writing.** No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**5.11**  **When Agreement Becomes Effective; Counterparts.** This Agreement shall become effective upon its full execution and final approval by the Court. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

**5.12**  **Facsimile and Email Signatures.** Any party may execute this Agreement by causing its counsel to sign on such party's behalf on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party. Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile, pdf, or email.

**5.13**  **Authority.** The signatories below confirm that they have the actual authority to sign this Agreement on behalf of the person or entity for whom they are signing.

**[SPACE INTENTIONALLY LEFT BLANK- SIGNATURE PAGE TO FOLLOW]**

**WE AGREE TO THESE TERMS,**

<u>**PLAINTIFFS:**</u>

**CLASS COUNSEL – LEE LITIGATION GROUP, PLLC, AND ON BEHALF OF THE NAMED PLAINTIFF ENRIQUE GARCIA MORALES, AND CLASS MEMBERS**

By: _____    Date: January 7, 2019
**C.K. LEE, ESQ.**

<u>**DEFENDANTS:**</u>

NEW INDIAN FOODS, LLC
By: _____    Date: January 4, 2019

By: _____    Date: January 4, 2019
**FLOYD CARDOZ**

19

81763541.v1