**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ENRIQUE GARCIA MORALES, on behalf of himself and others similarly situated, | Case No.: 18-cv-3401 |
| Plaintiff, | Ramos, J. |
| v. | |
| NEW INDIAN FOODS, LLC d/b/a THE BOMBAY BREAD BAR and FLOYD CARDOZ, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED**
**MOTION FOR CERTIFICATION OF THE SETTLEMENT CLASS,**
**FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT**
**AND APPROVAL OF THE FLSA SETTLEMENT**

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
148 West 24th Street, Eighth Floor
New York, New York 10011
Telephone: (212) 465-1188
Fax: (212) 465-1181

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND .................................................... 1

   I. Procedural History ............................................................................................... 1

   II. Overview of Investigation and Discovery .......................................................... 2

   III. Settlement Negotiations, Further Discovery & Preliminary Approval ............... 4

SUMMARY OF THE SETTLEMENT TERMS AND ADMINISTRATION ................ 5

ARGUMENT................................................................................................................. 6

   I. The Settlement Class Meets the Legal Standard for Class Certification ............... 6

      A. Numerosity ..................................................................................................... 7

      B. Commonality................................................................................................... 7

      C. Typicality ....................................................................................................... 8

      D. Adequacy of the Named Plaintiff .................................................................. 9

      E. Certification Is Proper Under Rule 23(b)(3) ................................................ 10

         1. Common Questions Predominate ................................................................ 10

         2. A Class Action Is a Superior Mechanism ................................................... 11

   II. The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be
Approved in All Respects ...................................................................................... 12

      A. The Proposed Settlement Is Substantively Fair ............................................ 13

         1. Litigation Through Trial Would Be Complex, Costly, and Long (*Grinnell*
Factor 1) .................................................................................................... 14

         2. The Reaction of the Class Has Been Positive (*Grinnell* Factor 2) ............ 14

         3. Discovery Has Advanced Far Enough to Allow the Parties to Responsibly
Resolve the Case (*Grinnell* Factor 3) ....................................................... 15

4.  Plaintiff Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5) ........................................................................................................16

5.  Establishing a Class and Maintaining It Through Trial Would Not Be Simple (*Grinnell* Factor 6) ........................................................................17

6.  Defendants' Ability to Withstand a Greater Judgment (*Grinnell* Factor 7) ........................................................................................................17

7.  The Settlement Fund Is Substantial in Light of the Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9) ...................18

B.  The Proposed Settlement is Procedurally Fair .................................................19

1.  The Settlement Was the Result of Arm's Length Negotiations ................19

2.  The Distribution of Class Notice Satisfied Due Process ...........................21

III.  Approval of the FLSA Settlement Is Appropriate Under Federal Law ...............23

CONCLUSION ........................................................................................................24

# TABLE OF AUTHORITIES

**CASES**                                                                                              **Page(s)**

*In re Agent Orange Product Liability Litigation MDL No. 381,*
818 F.2d 145 (2d. Cir. 1987) ............................................................................................22

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997).............................................10, 12

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000) ..........................................................................passim

*Beckman v. Greentree Sec., Inc.,* 87 N.Y.S 566, 570-71, 663 N.E.2d 886, 888, 640
N.Y.S.2d 845, 847 (1996)................................................................................................22

*Berland v. Mack*, 48 F.R.D. 121 (S.D.N.Y. 1969) ..........................................................21

*Cagan v. Anchor Sav. Bank FSB*,
No. 88 Civ. 3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990) .......................................19

*Campos v. Goode*,
No. 10 Civ. 224, 2010 WL 5508100 (S.D.N.Y. Nov. 29, 2010) .......................................9

*City of Detroit v. Grinnell Corp.,*
495 F.2d 448 (2d Cir. 1974) ........................................................................................passim

*Clark v. Ecolab, Inc.*,
Nos. 07 Civ. 8623(PAC), 04 Civ. 4488(PAC), 06 Civ. 5672(PAC), Slip Copy, 2009
WL 6615729 (S.D.N.Y. November 27, 2009) .......................................................8, 9, 11

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995)............................7

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001)......................................12, 13, 20

*deMunecas v. Bold Food, LLC*,
No. 09 Civ. 440, 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) ..............................passim

*Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006)..............................................6

*Diaz v. E. Locating Serv., Inc.*,
No. 10 Civ. 4082, 2010 WL 5507912 (S.D.N.Y. Nov. 29, 2010) ............................passim

*Dorn v. Eddington Sec., Inc.*,
No. 08 Civ. 10271 LTS, Slip Copy, 2011 WL 382200 (S.D.N.Y. Jan. 21, 2011) ..........8, 9

*Dziennik v. Sealift, Inc.*,
No. 05 Civ. 4659, 2007 WL 1580080 (E.D.N.Y. May 29, 2007) ........................ 9

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
No. 05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ................... 20

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) ............................ passim

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982) ......................................... 7

*Gilliam v. Addicts Rehab. Ctr. Fund*,
No. 05 Civ. 3452, 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ....................... 19

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ..................... 13

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ................................ 12

*Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989) ................................ 23

*In re Ira Haupt & Co.,* 304 F. Supp. 917 (S.D.N.Y. 1969) ................................. 16

*In re Merrill Lynch Tyco Research Securities Litigation*, 249 F.R.D. 124 (2008) ............ 21

*In re Prudential Securities, Inc.,* 164 F.R.D. 362 (S.D.N.Y 1996) .................... 21

*In re Colt Indus.,* 155 A.D.2d 154, 553 N.Y.S.2d 154 (1st Dep't 1990) .......................... 22

*Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391 (S.D.N.Y. 1986) .............. 7

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982) ................... 23

*Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358 (S.D.N.Y. 2002) ...................... 14

*Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) ................................................ 7, 8, 16

*McBean v. City of N.Y.*, 228 F.R.D. 487 (S.D.N.Y. 2005) ................................ 11

*McKenna v. Champion Int'l Corp.*, 747 F.2d 1211 (8th Cir. 1984) ................................ 23

*McMahon v. Olivier Cheng Catering & Events, LLC*,
No. 08 Civ. 8713, 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) ................................ 9, 10

*Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.)*,
471 F.3d 24 (2d Cir. 2006) ............................................................................ 10

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ...................... 19

*In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997) ........................16

*Parker v. Time Warner Entertainment Company*, 239 F.R.D. 318 (E.D.N.Y. 2007) .......21

*Peters v. National R.R. Passenger Corp.*, 966 F.2d 1483, 1486-87 (D.C.Cir.1992).........22

*Prasker v. Asia Five Eight LLC*,
No. 08 Civ. 5811, 2010 WL 476009 (S.D.N.Y. Jan. 6, 2010) ........................................16

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
237 F.R.D. 26 (E.D.N.Y. 2006) .....................................................................................7

*RMED Int'l, Inc. v. Sloan's Supermkts., Inc.*,
No. 94 Civ. 5587. 2003 WL 21136726 (S.D.N.Y. May 15, 2003) ................................14

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993) ...............................................................8

*Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590 (2d Cir. 1986).......................................10

*Silber v. Mabon,* 18 F.3d 1449, 1451 (9th Cir.1994) .......................................................22

*Spann v. AOL Time Warner, Inc.*,
No. 02 Civ. 8238, 2005 WL 1330937 (S.D.N.Y. June 7, 2005) ...................................13

*In re Top Tankers, Inc. Sec. Litig.*,
No. 06 Civ. 13761, 2008 WL 2944620 (S.D.N.Y. July 31, 2008) .................................20

*Torres v. Gristede's Corp.*,
No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. September 29, 2006) ..........................11

*Toure v. Cent. Parking Sys.*,
No. 05 Civ. 5237, 2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007) ...................................9

*Trist v. First Federal Savings & Loan Ass'n,* 89 F.R.D. 1, 3 (E.D.Pa.1980)...................21

*Velez v. Majik Cleaning Serv., Inc.*,
No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007) ..................................16

*In re Visa Check/MasterMoney Antitrust Litig.*,
280 F.3d 124 (2d Cir.2001) ...............................................................................10, 11, 12

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005) ........................................................................12, 13, 20, 21

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) ..............................15

*Weigner v. City of New York,* 852 F.2d 646, 649 (2d Cir.1988) ................................21, 22

*Wright v. Stern*, 553 F. Supp. 2d 337 (S.D.N.Y. 2008) .....................................................15

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(a) .................................................................................................passim

Fed. R. Civ. P. 23(b)(3) ............................................................................................passim

Fed. R. Civ. P. 23(e)(2) ................................................................................................15

**INTRODUCTION**

Plaintiff submits this Memorandum of Law in support of his Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Plaintiff's Motion for Final Approval"). The parties' $300,000 settlement of this wage and hour class and collective action satisfies all of the criteria for final approval. Plaintiff seeks an order: (1) certifying the settlement class described below; (2) approving as fair and adequate the class-wide settlement of this action, as set forth in the Settlement Agreement and Release ("Settlement Agreement"); and (3) approving the FLSA Settlement.

On June 20, 2019, the Court took the first step in the settlement approval process by granting preliminary approval and directing that notice be mailed to class members. Docket No. 34. The members of the class have been notified of the terms of the settlement and their right to opt out of or object to it. For the reasons stated below, the Court should grant final approval.

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.   Procedural History**

ENRIQUE GARCIA MORALES filed a Class and Collective Action Complaint on April 18, 2018. An amendment of the Complaint was then filed on May 17, 2018 (the "Amended Complaint"). The Amended Complaint asserts collective and class action claims against Defendants. Specifically, Plaintiff alleges that Defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and/or the New York Labor Law ("NYLL") Article 6, §§ 190 *et seq.*, and Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations by, *inter alia*: (i) failing to pay minimum wages due to an invalid tip credit, (ii) unlawfully retaining gratuities, and (iii) failing to meet the New York Labor Law's requirement on wage statements and wage and hour notices.

Defendants sharply disagreed with the allegations made by Plaintiff on behalf of himself and the Class.

After the Amended Complaint was filed, Plaintiff and Defendants agreed to engage in dialogue regarding the possibility of a voluntary resolution of the claims asserted in the Litigation and would engage in mediation following an exchange of information and payroll data.

On October 3, 2018, after exchanging detailed mediation position statements, the parties engaged in an all-day private mediation with Martin F. Scheinman, Esq. of Scheinman Arbitration & Mediation Services, an experienced mediator who has been involved in successfully resolving countless wage and hour and other disputes involving various companies, including restaurants and bars, in New York City. At the mediation, the parties reached a settlement in principle. On June 20, 2019, the Court granted preliminary approval of the settlement.

## II.    Overview of Investigation and Discovery

Plaintiff conducted a thorough investigation of the claims and defenses, focusing on the underlying merits of Class Members' claims, the damages to which they were entitled, and the propriety of class certification. Plaintiff's counsel conducted in-depth interviews with Plaintiff to determine the hours he worked, the wages he was paid, the nature of his daily activities, and other information relevant to his claims.

Through discovery produced in connection with mediation, Plaintiff received and reviewed comprehensive documentation, including over 5,000 pages of confidential employment records, including payroll records for all tipped employees,  wage and tip credit notices, wage statements for all class members, and electronic employment data (including work periods) for

all class members. Plaintiff's Counsel conducted a thorough investigation and legal research on the underlying merits of Plaintiff's and Class Members' claims and the purported damages. The discovery was produced confidentially pursuant to the stipulated protective Order.

Based on this discovery, Plaintiff was able to perform damages calculations and assess his claims, the class's claims, and Defendants' defenses. After investigating the claims of the Plaintiff and the Class, in Plaintiff and Class Counsel's view, it became apparent that certain claims carried significant risk, may be defeated, or at most, significantly weakened, for the following reasons:

(I) Plaintiff and Tipped Subclass members brought a minimum wage claim based on invalid tip credit. This claim is highly risky, however, because written notice of the tip credit was provided to tipped employees, and, of the sampling of documents provided in advance of the mediation, a portion of the written tip credit notices appear to be compliant.

(II) Plaintiff and class members brought statutory claims that Defendants failed to provide proper wage notices. However, in their class discovery production, Defendants produced wage notices. The only issues are whether the notices contained all of the required information, whether the notices were provided with every change in pay rate and whether such notices provided sufficient notice of the tip credit.

(III) Plaintiff and class members brought statutory claims that Defendants failed to provide wage statements in compliance with the law. This claim is highly risky as Defendants produced in discovery employee wage statements substantially in compliance with the law. The only issues are whether the wage statements provided sufficient notice of the tip credit, as they did not include the hourly tip allowance.

Under the best case scenario, and considering the significant risks described above, assuming Plaintiff and the class were to prevail on their claims for minimum wage, wage notice and wage statement violations, the total class liability (exclusive of liquidated damages) is approximately $1,727,911.67. However, this "best case scenario" amount may be reduced because of Defendants' positions and affirmative defenses outlined above. Based on the "best case scenario" calculation of approximately $1.7 Million, the $300,000 settlement represents an approximately 17% recovery, which is fair and reasonable. Assuming *arguendo* that the wage notices and wage statements were compliant, the best case scenario for backwages owed would be approximately $160,061.67, and therefore, the settlement represents an approximately 187% recovery. While Plaintiff believes that he could ultimately establish Defendants' liability on some of his claims, to do so would require significant factual development. Plaintiff's counsel is experienced and realistic, and understands that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. The proposed settlement alleviates these uncertainties. This factor therefore weighs heavily in favor of final approval.

## III.    **Settlement Negotiations, Further Discovery & Preliminary Approval**

The Parties engaged in extensive negotiations and continued to engage in exhaustive discovery. The formal parameters of the settlement were the result of heated negotiations. In addition to numerous informal telephone conferences for settlement, the parties also engaged in an all-day private mediation with Martin F. Scheinman, Esq. of Scheinman Arbitration & Mediation Services on October 3, 2018, at which the parties reached a settlement in principle. During the weeks thereafter, the parties continued negotiating the terms of the class settlement and reached an agreement on all terms, which they memorialized in the Settlement Agreement.

If the parties had not been able to settle amicably, the parties would have engaged in further discovery, conducted depositions, retained and deposed experts, Plaintiff would have moved for conditional collective certification under 29 U.S.C. § 216(b) and class certification pursuant to Fed. R. Civ. P. 23, and Defendants would have moved for de-certification of the FLSA collective and summary judgment, each at a significant cost to the parties.

Because of the uncertainty of Plaintiff's legal position and the uncertainty of obtaining class certification and maintaining class certification through trial, the Parties agreed to the settlement of $300,000. Class Counsel then prepared and submitted a preliminary approval motion, which was approved by the Court on June 20, 2019.

## SUMMARY OF THE SETTLEMENT TERMS AND ADMINISTRATION

| Category | Settlement Term | Remarks |
|---|---|---|
| Gross Settlement Fund | $300,000 | The Fund covers all of Defendants' obligations under the settlement (exclusive of payroll taxes ordinarily borne by the employer on any W-2 payments under the settlement), including but not limited to any attorneys' fees and costs, administration fees, class members' awards, and a service award to the Plaintiff, if any. |
| Attorneys' Fees | 1/3 of the Fund, $100,000 | Class Counsel has filed a motion for approval of attorneys' fees and reimbursement of expenses simultaneously with this motion. |
| Costs & Expenses | $2,800.00 | Filing Fee and Mediation Fees. |
| Administration Fees | $12,500 | Admin. Fees are comparable to admin. fees usually paid to the settlement administrator in similar class settlement administrations with similar class sizes. |
| Service Award | $10,000 | Plaintiff ENRIQUE GARCIA MORALES was the sole plaintiff assisting Class Counsel. Class Counsel has filed a motion for approval of service award simultaneously with this motion. |
| Reversion | Is there any reversion? | NO. There is no reversion. Defendants will pay the full settlement amount of $300,000. All class members that do not opt-out will be mailed a check. Any unclaimed amounts remaining 120 days after the Fund shall be applied to a *cy pres* charitable donation to Share Our Strength. |
| Claims Made / | Are class members | NO. This is an opt-out settlement, not on a |

| Opt-out basis | required to file a claim form to receive a payment? | claims made basis. All class members that do not opt-out will be mailed a check. |
| Allocation Formula | How will the payment allocations to class members be calculated | Each class member will receive a share of the Fund. After deductions for attorneys' fees and expenses, administration fees and service payment, class members will be paid a proportionate share of the net settlement fund based on a formula taking into account weeks worked for Defendants during the relevant period, subject to a $20 floor payment. |
| Release | What is the scope of the release? | Every class member who does not opt out will release Defendants from all New York wage and hour claims. Every class member who cashes his or her check will release Defendants from Fair Labor Standards Act claims. |

## ARGUMENT

### I. The Settlement Class Meets the Legal Standard for Class Certification.

When faced with a proposed class action settlement, courts first examine whether the settlement class can be certified. *Denney v. Deutsche Bank AG,* 443 F.3d 253, 270 (2d Cir. 2006). On June 20, 2019, the Court preliminarily certified the settlement class. The Court should now grant final certification because all of the requirements of Federal Rule of Civil Procedure 23 ("Rule 23") are met. Plaintiff respectfully requests that the Court certify the following class for purposes of effectuating the settlement: all non-exempt employees who worked at The Bombay Bread Bar restaurant, formerly known as Paowalla, located at 195 Spring Street, New York, New York from June 1, 2016 through October 3, 2018. Under Rule 23, a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4)

the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

Rule 23(b)(3) requires the Court to find that: "[Q]uestions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Id.* at (b)(3). In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class certification. *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

## A. Numerosity

Numerosity is satisfied when the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[N]umerosity is presumed at a level of 40 members . . . ." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Plaintiff easily satisfies the numerosity requirement as there are 309 class members.

## B. Commonality

The proposed class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Although the claims need not be identical, they must share common questions of fact or law. *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 181 (W.D.N.Y. 2005). There must be a "unifying thread" among the claims to warrant class certification. *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986). Courts construe the commonality requirement liberally. *Frank*, 228 F.R.D. at 181. This

case involves numerous common issues. Plaintiff and the Rule 23 class members all bring common claims that Defendants: (1) failed to properly pay minimum wages due to an invalid tip credit and unlawfully retained gratuities for all non-exempt tipped employees; and (2) failed to meet the NYLL's requirements on wage statements and wage and hour notices for all non-exempt employees. *See Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271 LTS, Slip Copy, 2011 WL 382200, at *2 (S.D.N.Y. January 21, 2011) (Rule 23(a)(2) satisfied where common issues included whether defendants violated wage and hour laws by failing to pay overtime and spread of hours pay, making deductions from plaintiff's and class members' pay, and failing to keep accurate records of time worked); *Clark v. Ecolab, Inc.*, Nos. 07 Civ. 8623(PAC), 04 Civ. 4488(PAC), 06 Civ. 5672(PAC), Slip Copy, 2009 WL 6615729, at *3 (S.D.N.Y. November 27, 2009) (commonality satisfied where common issues included "whether Defendant violated wage and hour laws by failing to pay overtime premium pay for hours [class members] worked over 40 in a workweek, and failing to keep accurate records of time worked").

## C. Typicality

Typicality is also satisfied. Typicality is satisfied "when each class member's claim rises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376 (internal quotation marks omitted). "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank*, 228 F.R.D. at 182. "[M]inor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993). Here, Plaintiff's claims arise from the same factual and legal circumstances that form the bases of the Rule 23 Class Members' claims. Plaintiff and the Rule

23 Class Members performed the same or similar job duties as non-exempt employees employed by Defendants at the Restaurant (as defined in the Settlement Agreement) at any time during the Class Period. Plaintiff and non-exempt tipped employees make the same allegations regarding unpaid minimum wage based on an invalid tip credit. Plaintiff and Class members further allege they were not provided proper wage notices and proper wage statements as required under the NYLL. Because Plaintiff's wage and hour claims arise from the same factual and legal circumstances that form the basis of the Rule 23 Class Members' claims, Plaintiff satisfies the typicality requirement. *See Dorn v. Eddington Sec., Inc.*, 2011 WL 382200, at *2 ("Plaintiff satisfies Federal Rule of Civil Procedure 23(a)(3) because Plaintiff's claims for overtime pay, spread of hours pay, and unlawful deductions arise from the same factual and legal circumstances that form the bases of the class members' claims."); *Clark*, 2009 WL 6615729, at *4; *Frank*, 228 F.R.D. at 182.

### D. Adequacy of the Named Plaintiff

Plaintiff ENRIQUE GARCIA MORALES is an adequate class representative. Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P.23(a)(4). "The adequacy requirement exists to ensure that the named representatives will have an interest in vigorously pursuing the claims of the class, and … have no interests antagonistic to the interests of other class members." *Toure v. Cent. Parking Sys. of N.Y.*, No. 05 Civ. 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (internal quotation marks omitted); *see also Campos v. Goode*, No. 10 Civ. 224, 2010 WL 5508100, at *2 (S.D.N.Y. Nov. 29, 2010); *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713, 2010 WL 2399328, at *2 (S.D.N.Y. Mar. 3, 2010). "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Dziennik v. Sealift,*

*Inc.*, No. 05 Civ. 4659, 2007 WL 1580080, at *6 (E.D.N.Y. May 29, 2007) (internal quotation marks omitted). Here, Plaintiff satisfies the adequacy requirement because there is no evidence that Plaintiff and class members' interests are at odds. *See Diaz v. E. Locating Serv., Inc.*, No. 10 Civ. 4082, 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010) (finding adequacy requirement met where plaintiffs' interests were not antagonistic or at odds with those of class members); *deMunecas v. Bold Food, LLC*, No. 09 Civ. 440, 2010 WL 3322580, at *2 (S.D.N.Y. Aug. 23, 2010) (same); *McMahon v. Olivier Cheng Catering & Events, LLC*, 2010 WL 2399328, at *2 (same).

**E. Certification Is Proper Under Rule 23(b)(3).**

Rule 23(b)(3) requires that the common questions of law or fact "predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality." *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).

**1. Common Questions Predominate.**

Predominance requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole…. predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001) (internal quotation marks omitted), *abrogated on other grounds by Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.)*, 471 F.3d 24 (2d Cir. 2006). The essential inquiry is whether "liability can be determined on a class-wide basis, even when there

are some individualized damage issues." *In re Visa Check*, 280 F.3d at 139. Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of N.Y.*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005). Here, class members' common factual allegations and common legal theory – that all tipped employees were subjected to the same allegedly unlawful policy of failing to pay minimum wages (based on invalid tip credit), and that all employees failed to receive proper wage statements and notices – predominate over any factual or legal variations among Class Members. *See Clark*, 2009 WL 6615729, at *5 (common factual allegations and common legal theory predominated over factual and legal variations among Class Members in wage and hour misclassification case); *Torres v. Gristede's Corp.*, No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006), at *16 (plaintiffs "introduced sufficient proof that Defendants engaged in a common practice to deny employees overtime pay," and "this issue predominates over any individual calculations of overtime wages"). The only individualized issues pertain to the calculation of damages, and it is well-settled that individualized damages calculations do not defeat predominance. *See Frank*, 228 F.R.D. at 183 (collecting cases holding that calculation of damages in overtime litigation does not impact the predominance analysis). Plaintiff therefore satisfies Rule 23(b)(3).

**2. A Class Action Is a Superior Mechanism.**

Plaintiff also satisfies the superiority requirement. Superiority analyzes whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3). Class adjudication of this

case is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).  Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial.") (internal citation omitted); *Frank*, 228 F.R.D. at 183 ("The court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement.") Moreover, denying class certification on manageability grounds is "disfavored" and "should be the exception rather than the rule." *In re Visa Check*, 280 F.3d at 140 (internal quotation marks omitted). 1023 (9th Cir. 1998); *Diaz*, 2010 WL 5507912, at *3. Plaintiff and class members have limited financial resources with which to prosecute individual actions. Concentrating the litigation in this Court is desirable because the allegedly wrongful conduct occurred within its jurisdiction.

## II. The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be Approved in All Respects.

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(2). Judicial determination of procedural fairness involves examination of the negotiating process leading to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974). Courts

examine procedural and substantive fairness in light of the "strong judicial policy in favor of settlement" of class action suits. *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted); *see also Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238, 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions"). When, as here, "a settlement is negotiated prior to class certification…it is subject to a higher degree of scrutiny in assessing its fairness." *D'Amato*, 236 F.3d at 85; *Spann*, 2005 WL 1330937, at *5. Even under high scrutiny, procedural and substantive considerations support approving the proposed settlement.[1]

## A. The Proposed Settlement Is Substantively Fair.

In *Grinnell Corp.*, the Second Circuit provided the analytical framework for evaluating the substantive fairness of a class action settlement. 495 F.2d at 448, *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). The *Grinnell* factors guide district courts in making this determination. They are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. 495 F.2d at 463. All of the *Grinnell* factors weigh in favor of final approval of the Settlement Agreement.

---

[1] Defendants deny Plaintiff's allegations and assert that they complied with all applicable laws and regulations at all times.

**1. Litigation Through Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1).**

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiff seeks to avoid significant expense and delay and ensure a speedy, risk-free recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato*, 236 F.3d 78. This case is no exception, with 309 putative class members with fact-intensive claims under both federal and state law. A fact-intensive trial would be necessary. Preparing and putting on evidence at such a trial would consume tremendous amounts of time and resources and demand substantial judicial resources. A trial on damages, even on a representative basis, would be costly and would further defer closure. Any judgment would likely be appealed, thereby extending the duration of the litigation. This settlement, on the other hand, makes monetary relief available to class members in a prompt and efficient manner, weighing in favor of final approval.

**2. The Reaction of the Class Has Been Positive (*Grinnell* Factor 2).**

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002). The lack of class member objections "may itself be taken as evidencing the fairness of a settlement." *RMED Int'l, Inc. v. Sloan's Supermkts., Inc.*, No. 94 Civ. 5587. 2003 WL 21136726, at *1 (S.D.N.Y. May 15, 2003). Here, a third party administrator mailed the Court-approved notices ("Notices") of the class and collective action and settlement to the class members. The Notices explicitly informed class members of their rights and the procedures to participate in the NYLL and FLSA settlements. After receipt of the

Notice, no class members have objected to the settlement or requested to be excluded from the settlement.

Class Counsel believes that the proposed settlement is fair because no individual has made any objections or requested to be excluded from settlement after the notice of settlement was mailed. *See Diaz v. E. Locating Serv. Inc.,* 2010 WL 5507912 at *4 (S.D.N.Y.) (finding the fact that no class member objected to settlement or requested exclusion demonstrated that the class approved of the settlement); *deMunecas v. Bold Food, LLC*, 2010 WL 3322580, at *5 (S.D.N.Y.); *Wright v. Stern*, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008).

**3. Discovery Has Advanced Far Enough to Allow the Parties to Responsibly Resolve the Case (*Grinnell* Factor 3).**

The parties have completed enough discovery to recommend settlement. The pertinent question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001)) (internal quotation marks omitted). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . but an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig*, 80 F. Supp. 2d at 176 (quoting *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 263 (S.D.N.Y. 1998)) (internal quotation marks omitted). The parties' discovery here meets this standard. Class Counsel conducted in-depth interviews with Plaintiff to determine the hours he worked, the wages he was paid, the nature of his daily activities, and other information relevant to his claims. Plaintiff obtained substantial amounts of data, including over 5,000 pages of confidential employment records, including payroll records for all tipped employees, wage and tip credit notices, wage statements for all class members, and electronic employment data (including work periods) for

all class members. Plaintiff performed detailed damages calculations based on the data that Defendants provided.

The parties also engaged in an all-day private mediation on October 3, 2018 overseen by Martin F. Scheinman, Esq. Based on these circumstances, the parties were well-equipped to evaluate the strengths and weaknesses of the case. *See Frank*, 228 F.R.D. at 185 (approving settlement of case "in relatively early stages of discovery" where parties had exchanged extensive information pertaining to the identities of class members and to Defendant's time and pay practices and where counsels' negotiations, while "cooperative," had "been in no way collusive"); *see also Diaz*, 2010 WL 5507912, at *5; *deMunecas*, 2010 WL 3322580, at *5 (approving settlement where plaintiffs had obtained discovery through an informal exchange of information and engaged in mediation); *Prasker v. Asia Five Eight LLC*, No. 08 Civ. 5811, 2010 WL 476009, at *5 (S.D.N.Y. Jan. 6, 2010) (same). This factor also weighs in favor of final approval.

**4. Plaintiff Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5).**

Although Plaintiff believes his case is strong, it is not without risk. "Litigation inherently involves risks." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007). In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 177 (quoting *Marisol A. v. Giuliani*, 185 F.R.D. 152, 164 (S.D.N.Y. 1999)) (internal quotation marks omitted). A trial on

the merits would involve significant risk, as detailed in Section II, "Overview of Investigation and Discovery", *supra.*

Plaintiff's counsel is experienced and realistic, and understands that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. The proposed settlement alleviates these uncertainties. This factor therefore weighs heavily in favor of approval.

### 5. Establishing a Class and Maintaining It Through Trial Would Not Be Simple (*Grinnell* Factor 6).

Even if preliminary class status is granted, the risk of maintaining that class certification through trial is also present, particularly in light of the *Dukes* and *Comcast* decisions. Further, Defendants may argue on a decertification motion that individual questions preclude class certification. Risk, expense, and delay permeate such a process. Settlement eliminates this risk, expense, and delay. This factor also favors final approval.

### 6. Defendants' Ability to Withstand a Greater Judgment (*Grinnell* Factor 7).

While Defendants may be able to withstand a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9 (alterations and citation omitted)). Here, the Settlement Agreement eliminates the risk of collection. Defendants have already deposited $225,000 of the Settlement Fund with the Administrator. The remaining balance of $75,000 will be funded within 7 calendar days of the Final Effective Date, following final approval. In respect of the individual Defendants, their liability would be predicated on proving their actual day to day involvement with the business, which is highly risky.

**7. The Settlement Fund Is Substantial in Light of the Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9).**

The $300,000 settlement amount represents a good value given the attendant risks of litigation and the collection risks discussed above, even though the recovery could be greater if Plaintiff succeeded on all claims at trial and survived an appeal. Each class member who does not opt-out of the settlement will receive a payment. In Plaintiff's counsel's estimation, the settlement represents a significant percentage of the recovery that Plaintiff would have achieved had he prevailed on all of his claims and survived an appeal.

Under the best case scenario, and considering the significant risks described above, assuming Plaintiff and the class were to prevail on their claims for minimum wage, and wage notice and wage statement violations, the total class liability (exclusive of liquidated damages) is approximately $1,727,911.67. However, this "best case scenario" amount may be reduced because of Defendants' positions and affirmative defenses outlined above. Based on the "best case scenario" calculation of approximately $1.7 Million, the $300,000 settlement represents an approximately 17% recovery, which is fair and reasonable. Assuming *arguendo* that the wage notices and wage statements were compliant, the best case scenario for backwages owed would be approximately $160,061.67, and therefore, the settlement represents a recovery of 100% of the back wages, plus a significant portion of liquidated damages.

This figure is Plaintiff's "best case scenario" amount and may be further reduced because of Defendants' positions and affirmative defenses outlined above.

Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount is reasonable. "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n.2. "It is well settled law that

a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982); *see also Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423, at *12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million"). The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). Moreover, when settlement assures immediate payment of substantial amounts to class members, "even if it means sacrificing 'speculative payment of a hypothetically larger amount years down the road,'" settlement is reasonable under this factor. *See Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008).

**B. The Proposed Settlement Is Procedurally Fair.**

### 1. The Settlement Was the Result of Arm's Length Negotiation

The proposed settlement is procedurally fair because it was reached through arm's-length negotiations, and after experienced counsel had evaluated the merits of Plaintiff's claims. *See Diaz*, 2010 WL 5507912, at *4 (finding settlement to be "procedurally fair, reasonable, adequate, and not a product of collusion" where plaintiffs had conducted a thorough investigation and engaged in extensive, arm's-length negotiations involving counsel and the services of an experienced class action mediator); *deMunecas*, 2010 WL 3322580, at *4 (same). A

"presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted); *see also D'Amato,* 236 F.3d at 85. "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig*., No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007); *see In re Top Tankers, Inc. Sec. Litig*., No. 06 Civ. 13761, 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008).

Here, the settlement was reached after Plaintiff conducted a thorough investigation and evaluation of the claims, and after extensive negotiations between the parties, including an all-day mediation with Martin F. Scheinman, Esq. of Scheinman Arbitration & Mediation Services. Class Counsel spent significant effort to achieve the $300,000 settlement. From the outset, Class Counsel thoroughly investigated the claims and defenses, focusing on the underlying merits of the class members' claims, the damages to which they were entitled, and the propriety of class certification. Through discovery, Class Counsel obtained, reviewed, and analyzed over 5,000 pages of confidential employment records, including payroll records for all tipped employees, wage and tip credit notices, wage statements for all class members, and electronic employment data (including work periods) for all class members. This comprehensive discovery enabled Class Counsel to perform class-wide damage calculations.

After three (3) months of litigation and negotiations, the parties reached and executed a detailed final settlement agreement. Lee Dec. at ¶ 11-15. At all times during the settlement process, the parties negotiated on an arm's-length basis. Lee Dec. at ¶16. These arm's-length negotiations involved counsel well-versed in wage and hour law, raising a presumption that the

settlement achieved meets the requirements of due process. *See Wal-Mart Stores*, 396 F.3d at 116; *deMunecas*, 2010 WL 3322580, at *4.

## 2. The Distribution of Class Notice Satisfied Due Process

Although 294 of the 309 Class Members received the class settlement notice (95%), due to undeliverable notices sent through the mail, we believe that such result is adequate and satisfies due process. While there are no rigid rules to determine the adequacy of notice in a class action, the standard is generally that of reasonableness. *In re Merrill Lynch Tyco Research Securities Litigation*, 249 F.R.D. 124 (2008), citing *Wal–Mart,* 396 F.3d at 113–14. Notice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members. *Weigner v. City of New York,* 852 F.2d 646, 649 (2d Cir.1988); *In re Prudential Securities, Inc.,* 164 F.R.D. 362, 368 (S.D.N.Y 1996) (finding due process does not require that every class member receive actual notice if reasonable means chosen that are likely to inform persons affected); *Parker v. Time Warner Entertainment Company*, 239 F.R.D. 318 (E.D.N.Y. 2007) (Rule 23 does not require that Plaintiffs' counsel give actual individual notice to each member of the class); *Trist v. First Federal Savings & Loan Ass'n,* 89 F.R.D. 1, 3 (E.D.Pa.1980) (finding non-systematic failure in mailing not problematic).

Rule 23(c)(2) requires the best notice practicable, not perfect notice. The word 'practicable' implies flexibility, with the type of notice depending upon the particular circumstances of each case. *Berland v. Mack*, 48 F.R.D. 121 (S.D.N.Y. 1969). Where members of the class are readily identifiable and personal notice would not be so prohibitively expensive as to prevent the class action from being prosecuted, individual notices by first class mail would

in most cases be the 'best notice practicable.' *Id*. The Courts have consistently concluded that the parties' diligent effort to mail individual notices to all reasonably identifiable class members, the mailing of additional notice materials indirectly through interested third parties and the provision of publication notice meet the requirements of due process. *See Beckman v. Greentree Sec., Inc.,* 87 N.Y.2d 566, 570-71, 663 N.E.2d 886, 888, 640 N.Y.S.2d 845, 847 (1996) (mailing notice fulfilled due process-actual notice unnecessary).

Due process does not require actual receipt of the individual notice by each and every possible class member. *See In re Colt Indus.,* 155 A.D.2d at 157, 160, 553 N.Y.S.2d at 140, 142 (1st Dep't 1990) (approving notice by publication in two newspapers); *see also Weigner v. City of New York,* 852 F.2d 646, 649 (2d Cir.1988) (holding "all risk of non-receipt" need not be eliminated), *cert. denied* 488 U.S. 1005 (1989); *Agent Orange,* 818 F.2d at 168; *Silber v. Mabon,* 18 F.3d 1449, 1451 (9th Cir. 1994) (holding class member bound by judgment although notice not received before opt-out date); *Peters v. National R.R. Passenger Corp.,* 966 F.2d 1483, 1486-87 (D.C. Cir. 1992) (same, notice not received because of incomplete address).

In the instant action, the Court should find that Class Members were provided with adequate notice of the settlement. Defendants provided a class list of 309 Class Members. The Claims Administrator disseminated the class notice to 309 Class Members, for whom contact details were provided by Defendants. 47 notices were returned as undeliverable. Of those, 5 of the notices were returned with forwarding addresses and were remailed. Of the other 42, the Claims Administrator diligently pursued obtaining alternate addresses and resent 32 notices after skip trace. In plain language that is easily understood by the average person (and was previously approved by this Court), the claims notices set forth essential information, including the background of the action, the terms of the settlement, the plan of allocation of the settlement

fund, and the various rights of class members under the settlement (including the right to opt-out, file objections and attend the Fairness Hearing). The Notices were sent by mail to the last known addresses for class members provided by Defendants. Accordingly, the Court should find that the notices of the proposed settlement of this case provided by mail, was the best notice practicable under the circumstances, and that the Claims Administrator acted reasonably in informing potential class members of the settlement.

### III. Approval of the FLSA Settlement Is Appropriate Under Federal Law.

Plaintiff also requests that the Court approve the settlement of his FLSA claims. He has brought his FLSA claims as a collective action. Unlike the procedure under Rule 23, collective members must affirmatively opt into the litigation in order to join it. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001). True to the opt-in procedure, only individuals who cash their checks will release their FLSA claims. Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989); *see also Diaz*, 2010 WL 5507912, at *6. Accordingly, the high standard for approval of a class action under Rule 23 does not apply to an FLSA settlement. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982); *Diaz*, 2010 WL 5507912, at *6; *deMunecas*, 2010 WL 3322580, at *7. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores*, 679 F.2d at 1353-54. If the proposed settlement reflects a

reasonable compromise over contested issues, the court should approve the settlement. *Id.* at 1354; *Diaz*, 2010 WL 5507912, at *6; *deMunecas*, 2010 WL 3322580, at *7. In this case, the settlement was the result of litigation and arm's-length negotiation involving vigorous back and forth. Lee Dec. ¶¶ 11-16. During the litigation, counsel highly experienced in wage and hour law represented Plaintiff and Defendants.

As of August 20, 2019, no class member has opted out of the settlement and no individual has objected to the settlement. Lee Dec. ¶¶ 22-23.

Because the Settlement Agreement resolves a clear and actual dispute waged in contested litigation and resolved through arm's-length settlement negotiations, it should be approved.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court: (1) certify the settlement class; (2) grant final approval of the Settlement Agreement as fair, reasonable, adequate and binding on all Class Members who have not timely opted-out; (3) approve the FLSA settlement; and (4) fully and finally dismiss the Litigation with prejudice.

Dated: August 20, 2019

Respectfully submitted,
LEE LITIGATION GROUP, PLLC

By: s/ C.K. Lee
C.K. Lee (CL 4086)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188
***Attorneys for Plaintiff, FLSA Collective Plaintiffs and the Class***